# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JULIE LOIS FUERTH,** | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *   Civil Action No. RWT 04-3823 |
| | * |
| **LEWIS IRA WINARSKY** et al.**,** | * |
| | * |
| Defendants. | * |

## MEMORANDUM OPINION

By this Court's Order of June 8, 2005 [Paper No. 19], all discovery disputes in this case were referred to Magistrate Judge William Connelly pursuant to 28 U.S.C. § 636(b).  Before the Court are two objections to two of his discovery rulings: (1) an objection by Plaintiff Fuerth (Paper No. 47) to Judge Connelly's Order (Paper No. 41) granting Defendant Winarsky's Motion to Quash Subpoenas (Paper No. 27), and (2) an objection by Plaintiff Fuerth (Paper No. 60) to Judge Connelly's Order (Paper No. 59) denying Plaintiff's Third Motion to Compel (Paper No. 57).

Under 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a), this Court "shall modify or set aside any portion of [a] magistrate judge's order found to be clearly erroneous or contrary to law."  For the reasons that follow, the Court overrules both objections.

### DEFENDANT'S MOTION TO QUASH SUBPOENAS

On July 6 and 8, 2005, Plaintiff served subpoenas on the Maryland Attorney Grievance Commission and the District of Columbia Office of Bar Counsel seeking

> All documents relating to complaints or investigations of misconduct, or disciplinary action, proposed or executed, regarding Lewis Ira Winarsky, including, but not limited to, violations of [Maryland Lawyers'] [District of Columbia] Rules of Professional Conduct 3.3 or 3.4, or other

misconduct as defined by Rule 8.4.

In response, on July 15, 2005, Defendants filed a Motion to Quash Subpoenas and Motion for Protective Order [Paper No. 27]. Three days later, Judge Connelly issued an Order temporarily staying the subpoenas pending resolution of Defendants' Motion; Judge Connelly ultimately granted the Motion to Quash Subpoenas on September 13, 2005. [Paper No. 41] The subpoenas were quashed because their subject (to determine whether legal clients of Mr. Winarsky filed complaints with Bar Counsel in the District of Columbia or Maryland regarding alleged legal misconduct) is irrelevant to the instant case, which concerns alleged negligence by Defendant Winarsky regarding mold infestation in an apartment Plaintiff Fuerth rented. In her Complaint, the Plaintiff alleges three claims against Defendants: (1) negligent personal injury (the alleged mold infestation caused Plaintiff to suffer a permanent debilitating illness); (2) negligent damage to personal property (the alleged mold infestation caused injuries to Plaintiff's cat); and (3) breach of contract/constructive eviction (Defendants' alleged failure to maintain apartment in a habitable condition). As Judge Connelly pointed out, there is no allegation of legal malpractice. Lewis Winarsky has not been sued in his capacity as an attorney but in his capacity as a property manager and/or owner.

In response, Fuerth makes numerous allegations regarding Winarsky's veracity and candor, and she claims that the evidence demonstrates that although Winarsky was fully involved in another toxic mold incident from 1996 to 1999, he has lied to conceal his personal knowledge of the causation of mold infestation and its adverse effects on his tenants' health. She further alleges that her ongoing investigation has revealed witnesses who will testify that Winarsky has perjured himself on previous occasions and been investigated by Bar Counsel for doing so. She argues that "[s]hould Mr. Winarsky claim that he was not cognizant of the

potential repercussions of such misconduct, a prior rebuke by Bar Counsel would refute this defense." Objection [Paper No. 47] at 6.

Notwithstanding Fuerth's arguments, the Court agrees with Judge Connelly's conclusion that the material sought by the subpoena is irrelevant to the instant case. In the absence of a proffer as to specific instances of attorney misconduct that would be relevant material on cross-examination, or that would lead to the discovery of such material, the Plaintiff cannot be allowed to embark on a generalized fishing expedition as to professional misconduct with which to tar the Defendant. Plaintiff states that one objective of her subpoena is to find "a prior rebuke by Bar Counsel," but disciplinary actions in both Maryland and the District of Columbia are a matter of public record; it is only private investigative documents that must be subpoenaed, and in the absence of a public disciplinary action against Mr. Winarsky, there is scant reason to believe that such documents even exist.[1]

Even if confidential attorney grievance documents pertaining to Mr. Winarsky exist, and even if such documents might be relevant to the extent they concern his veracity, the subpoena was considerably broader; it requested "documents relating to complaints or investigations of misconduct . . . *including, but not limited to*, violations of" the disciplinary rules pertaining to candor and veracity. *See* Paper No. 41 (emphasis added). This encompasses not only information that bears upon the Defendant's credibility, but also all other aspects of his conduct

---

[1] In Maryland, Md. Rule 16-723(c) provides that "a Petition for Disciplinary or Remedial Action [and] all proceedings on that petition; . . . a reprimand issued by the [Attorney Grievance] Commission; and . . . all [disciplinary] proceedings . . . in the Court of Appeals" are "public and open to inspection." If Mr. Winarsky has been "rebuked," the Plaintiff should be able to ascertain this without resort to a subpoena by using ordinary legal research services or by inspecting the public records at the Maryland Court of Appeals. If any documents pertaining to disciplinary investigations exist but did not result in a public record, such investigations also did not result in any action being taken against Mr. Winarsky, and therefore would prove little.
 The rules in the District of Columbia are similar. *See* D.C. Bar Rule XI(17).

3

as an attorney.  Such evidence is several steps removed from the subject of this case, and would, at best, only be suitable as a matter for inquiry on cross-examination, not for admission in its own right.  *See* Fed. R. Evid. 608(b) (forbidding admission of extrinsic evidence of specific prior acts that undercut a witness's credibility).  Accordingly, Judge Connelly's determination that the documents sought are irrelevant must be upheld.

In the alternative, the Court notes that when hearing a motion to quash a subpoena, a court "is required to apply the balancing standards: relevance, need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. In addition, other factors to be considered in the balancing test are of particular interest when the party subpoenaed to produce documents is a non-party." *Insulate America v. Masco Corp.*, 227 F.R.D. 427 (W.D.N.C. 2005).  A subpoena that seeks confidential information about professional disciplinary proceedings against a civil defendant, when the subject of the litigation has nothing to do with that defendant's profession, is inherently burdensome, and thus burden outweighs any relevance of or need for the information sought.

Accordingly, Plaintiff's Objection to Judge Connelly's decision to grant the Defendant's Motion to Quash will be overruled by separate Order.

**PLAINTIFF'S THIRD MOTION TO COMPEL**

On December 20, 2005, Judge Connelly denied the Plaintiff's Third Motion to Compel [Paper No. 57], finding that the exhibits did not fall within the obligation to disclose imposed on Defendants in the September 13, 2005 Order.  The Order required the Defendants to produce documents as follows: "Any and all citations issued by a governmental authority to any of the

Defendants for violations of housing/tenant code or law, or for failure to repair known defects to rental units or apartment buildings pertaining to any mold condition." Judge Connelly found Exhibit Nos. II and JJ to Plaintiff's Third Motion to Compel, letters from a Montgomery County Housing Code Inspector to Defendant Winarsky and Mr. George Mader, respectively, to be notices of *violations identified* by a government authority, not *citations issued* by a governmental authority.

The Plaintiff claims that the Defendants' failure to produce these documents when requested impeded the Plaintiff from making more knowledgeable inquiries at several depositions. The Plaintiff learned of the existence of these documents (which the Defendants did not deny were in its possession) as a result of their own investigation.

The Plaintiff has produced two letters addressed from the Inspector to the Defendants which states that "[a] reinspection of your property revealed that previously cited violations (referring the violations addressed by Exhibits II and JJ) have not been corrected." (P.'s Exh. KK.) Plaintiff argues that the Inspector's specific use of the term "violations cited" when referring to the violations in Exhibits II and JJ supports that the function and legal effect of Exhibits II and JJ is that of a "citation."

The Defendants point out that Exhibits II and JJ specifically refer to the necessary repairs as "violations," and not as citations. These violations are noted when an inspector inspects a unit and the property owner is then given a set amount of time to correct the violation. As long as the violations are cured within the requisite time-frame, no enforcement action or civil fine is issued. Therefore, the Defendants argued (and Judge Connelly agreed) that because the violations were corrected before any enforcement action or civil fine was issued, these violations did not rise to the level of a "citation."

This Court finds Judge Connelly's conclusion that the documents fell outside of the scope

of the order to be neither clearly erroneous nor contrary to law. As Judge Connelly correctly observed, the mere fact that a governmental authority (in this case the Montgomery County Division of Housing and Code Enforcement) has identified a violation of a housing code does not mean that a citation has been issued. As the Montgomery County Housing Code Enforcement Handbook explains,

> If violations [of the Housing Code] are observed [by a Housing and Code Enforcement inspector], a violation notice is prepared and the owner has a stated period of time to correct the violations. After the stated time period has elapsed, the property will be reinspected. If the owner has made the required repairs, the case is closed. Inspectors can grant for good cause an extension of time to correct violations. If the owner is not responsive, the Inspector takes legal action by issuing civil citations to the owner.

Montgomery County Housing Code Enforcement Handbook, *available at* http://www.montgomerycountymd.gov/dhctmpl.asp?url=/Content/DHCA/housing/code_E/handbook.asp#2 (last visited Apr. 12, 2006). In this case, the County sent Mr. Winarsky a notice of violations, but he made the required repairs before a citation was issued. The initial notice was not itself a citation, and Judge Connelly properly held it to be outside the scope of the September 13, 2005 Order.

Accordingly, Plaintiff's Objection to Judge Connelly's decision to deny the Third Motion to Compel will be overruled by separate Order.

  4/18/2006                                          /s/
   DATE                            ROGER W. TITUS
                                  UNITED STATES DISTRICT JUDGE